**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| SUNRISE VALLEY, LLC; WESTERN ROCK PRODUCT, a Utah corporation dba STAKER AND PARSON, | |
| Plaintiffs-Appellants, | No. 06-4188 |
| v. | |
| DIRK KEMPTHORNE,[*] in his capacity as Secretary of the Interior; BUREAU OF LAND MANAGEMENT; UNITED STATES OF AMERICA, | |
| Defendants-Appellees. | |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:05-CV-934-DB)**

---

Blake S. Atkin (with William O. Kimball, Brennan S. Moss on the briefs), Salt Lake City, Utah, for Plaintiffs-Appellants.

Andrea L. Berlowe, U.S. Department of Justice (with Sue Ellen Wooldridge, Assistant Attorney General, William Lazarus, Elizabeth A. Peterson, U.S. Department of Justice), Washington, D.C., for Defendants-Appellees.

---

[*]  Dirk Kempthorne has been appointed to serve as Secretary of the Interior, and he is substituted as an appellee in the place of his predecessor, Gale Norton, pursuant to Fed. R. App. P. 43(c)(2).

Before **HENRY**, Chief Judge, **BRISCOE**, and **HOLMES**, Circuit Judges.

---

**HENRY**, Chief Judge.

---

In this quiet title action brought pursuant to the federal Quiet Title Act, 28 U.S.C. § 2409a, plaintiffs-appellants Sunrise Valley, LLC and Western Rock Product (together, Western Rock), are appealing the order entered by the district court dismissing their amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Having considered the decisions of the United States Supreme Court in *Watt v. Western Nuclear, Inc.*, 462 U.S. 36 (1983) and *BedRoc Ltd.*, *v. United States*, 541 U.S. 176 (2004), we conclude that the district court correctly determined that the "sand, gravel, and rock" that is located on plaintiffs' real property are "minerals" reserved to the United States under the Stock-Raising Homestead Act of 1916 , 43 U.S.C. §§ 291-302. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore affirm.

## I. FACTUAL BACKGROUND

In 1925, pursuant to the Stock-Raising Homestead Act, Zera P.T. Hunt homesteaded the property in southern Utah located under U.S. Patent No. 957390, which underlies the property in question. The patent "except[ed] and reserv[ed] . . . to the United States all the coal and other minerals in the lands so entered and patented together with the right to prospect for, mine, and remove the same

-2-

pursuant to the provisions and limitations of the [Stock-Raising Homestead Act]." Aplts' App. at 37. Of the property at issue covered by Mr. Hunt's patent, Western Rock Product owns about 240 acres, and Sunrise Valley owns the balance.

"From 1974 to the present, the property owned by Western Rock has been operated by its owners as an open pit sand and gravel removal operation." Aplts' Opening Br. at 5. As the district court explained, "Western Rock . . . continued to exercise ownership over the property by operating an open pit sand and gravel operation until 1999 when the United States first claimed an ownership interest in the sand, gravel, and rock on Western Rock's property." Aplts' App. at 7.

"In 2003, Sunrise Valley, LLC, began purchasing property [in the same part of southwestern Utah]," and it "began searching for available sand, gravel, and rock." Aplts' Opening Br. at 10. It subsequently "discovered a sand, gravel, and rock pit located . . . on part of the property on which it had options." *Id.* According to Western Rock, however, Sunrise Valley has been unable to remove any sand, gravel, and rock from its property because the Bureau of Land Management "claims ownership" over those "common" materials. *Id.* at 11.

In its amended complaint, Western Rock requested that the district court quiet title in its favor to all of the sand, gravel, and rock that is located on its real property. Relying on the Supreme Court's decision in *Watt v. Western Nuclear, Inc.*, 462 U.S. 36 (1983), defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the United States owns the sand, gravel, and rock that is located on plaintiffs' property because those materials are "minerals" for purposes of the reservation of rights under the SRHA.

In determining that Western Rock failed to state a claim, the district court observed:

> In *Watt v. Western Nuclear*, 462 U.S. 36 (1983), the U.S. Supreme Court unmistakably held that gravel constitutes a mineral reserved to the United States in SRHA-patented lands. In *Western Nuclear*, the defendant owned lands granted under an SRHA patent, which reserved to the United States "all the coal and other minerals" in the land. *See id.* at 39. The BLM ruled that the defendant committed unintentional trespass by removing 43,000 cubic yards of gravel from its SRHA-patented land. *See id.* at 40-41. The defendant contested the ruling, arguing that gravel was not included within the reservation of minerals to the United States under the SRHA. *Id.* The U.S. Supreme Court rejected the defendant's argument, holding that "gravel is a mineral reserved to the United States in lands patented under the SRHA," *id.* at 60, because gravel (1) is mineral in character; (2) can be removed from the soil; (3) can be used for commercial purposes; and (4) there is no reason to suppose gravel was intended to be included in the surface estate. *Western Nuclear*, 462 U.S. at 53-54. The Court explained that the congressional purpose of reserving mineral rights under the SRHA was "to facilitate the concurrent development of both surface and subsurface resources." *Id.* at 42. Because "ranching and farming do not ordinarily entail the extraction of mineral substances," *id.* at 54, and because Congress understood that surface lands were patented "chiefly . . . for grazing and raising forage crops . . . for the support of a family," *id.* at 38, the Court found that it was best able to honor the

-4-

congressional purpose of the SRHA by construing the mineral reservation to encompass gravel. *Id.* at 47.

> This case is controlled by [*Western Nuclear*]. As in *Western Nuclear*, Plaintiffs acquired title to land covered by an SRHA patent, which reserved to the United States "all the coal and other minerals" in their land.

Aplts' App. at 7-8.

The district court also rejected plaintiffs' argument "that *Western Nuclear* is not applicable because it was essentially overruled by the concurring opinion in [*BedRoc*]." *Id.* at 9. As the court explained:

> At issue in *Bedroc* was land patented under the Pittman Underground Water Act of 1919, a statute pertaining only to Nevada that reserved "all valuable minerals" to the United States on lands patented thereunder. *Id.* at 176. The *Bedroc* Court held that the reservation of minerals under the Pittman Act did not reserve sand and gravel to the United States since sand and gravel were not "valuable mineral[s]." On this basis, Plaintiffs argue that the continued viability of *Western Nuclear* is "highly questionable."
>
> Plaintiffs' interpretation of *Bedroc* is misguided. Although the petitioners in *BedRoc* asked the Supreme Court to overrule *Western Nuclear*, the plurality refused this request, stating specifically that "we decline to overrule our recent [*Western Nuclear*] precedent." *Bedroc*, 541 U.S. at 183. In his concurrence, while Justice Thomas criticized the holding in *Western Nuclear*, he specifically declined to overrule *Western Nuclear* "[b]ecause the Government identifies significant reliance interests that would be upset" by doing so. *Id.* at 189. The dissent also refused to overrule *Western Nuclear*, stating that although "the majority in *Western Nuclear* may have misinterpreted Congress' intent," *id.* at 192, there does not exist adequate justification for disturbing a decision that has been settled law for two decades. Id. Thus, the *Bedroc* Court unanimously decided **not** to overrule *Western Nuclear*.

-5-

Aplts. App. at 9-10 (footnote omitted) (emphasis in original). The district court granted the motion to dismiss and Western Rock timely appealed.

## II. DISCUSSION

Western Rock challenges the district court's decision, arguing that (1) the property's rock, sand, and gravel are not minerals under the Stock-Raising Homestead Act; (2) instead, the Court's decision in *BedRoc Ltd.*, *v. United States*, 541 U.S. 176 (2004), interpreting "valuable minerals" under another statute is applicable to this case, and would exclude rock, sand, and gravel from the government's mineral reservations; and (3) unlike in *BedRoc*, no intervening contract rights would be disturbed from such exclusion. For the reasons set forth below, we hold that *BedRoc*'s reach is not so expansive, and that, under *Western Nuclear*'s undisturbed holding, the government's mineral reservations include rock, sand, and gravel, and that Western Rock's amended complaint is legally insufficient to state a claim for relief under the Quiet Title Act.

A. Standard of review

"Because the sufficiency of a complaint is a question of law, we review de novo the district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), applying the same standards as the district court." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). Those standards require that "we must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff." *United States v. Colo.*

*Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotation omitted).

B. The Stock-Raising Homestead Act of 1916

All land patents issued by the United States under the Stock-Raising Homestead Act are subject to an express reservation of mineral rights in favor of the United States. The Stock-Raising Homestead Act, "the last of the great homestead acts, provided for the settlement of homesteads on lands the surface of which was 'chiefly valuable for grazing and raising crops' and 'not susceptible of irrigation from any known source of water supply.'" *Western Nuclear*, 462 U.S. at 37 (quoting 43 U.S.C. § 292 (1976 ed.)). Congress's purpose was to bifurcate the surface and mineral rights to facilitate concurrent development. *Id.* at 50. It would, thus, have made little sense to give minerals to stock raisers.

C. Western Rock's Arguments

Western Rock raises three interrelated arguments to support reversing the district court: (1) the property's rock, sand, and gravel are not minerals under the Stock-Raising Homestead Act; (2) the Court's decision in *BedRoc* is applicable to this case, which would exclude rock, sand, and gravel from the government's

mineral reservations; and (3) that, unlike in *Bedroc*, no intervening contract rights would be disturbed from such exclusion.  We examine each argument in turn.

1. The Stock-Raising Homestead Act includes sand, gravel, and rock

First, Western Rock argues that, unlike in *Western Nuclear*, the sand, gravel, and rock on the relevant property is not found in a deposit that is "separable" from the surface estate.  The *Western Nuclear* Court has already reversed this circuit on a similar issue, so we take extra precaution here.

As noted by the district court, the Supreme Court developed a four-part test in *Western Nuclear* to aid in the determination of what the Stock-Raising Homestead Act mineral reservation encompasses:

> we interpret the mineral reservation in the Act to include substances [a] that are mineral in character (i.e., that are inorganic), [b] that can be removed from the soil, [c] that can be used for commercial purposes, and [d] that there is no reason to suppose were intended to be included in the surface estate.

462 U.S. at 53.

First, there is no debate that the rock, sand, and gravel at issue are inorganic substances and are minerals.  Western Rock challenges the removablility of the sand and gravel:  "Where common sand and gravel are pervasive as in this case, it can hardly be considered removable from the soil." Aplts' Opening Br. at 24.  While Western Rock is correct that the gravel deposit at issue in *Western Nuclear* "was an alluvial deposit covered with 12-18 inches of topsoil overburden," *id.* at 24; *see also Western Nuclear*, 462 U.S. at 40, the

-8-

physical characteristics of the deposit played no direct role in the Court's analysis in *Western Nuclear*. In fact, the Court devoted only a single line in its opinion to the removability issue. *See Western Nuclear*, 462 U.S. at 55 ("What is significant is that gravel can be taken from the soil and used for commercial purposes."). Similarly, while the *BedRoc* plurality noted that the sand and gravel at issue in that case "were plentiful and visible on the surface of the . . . land," *BedRoc*, 541 U.S. at 180, the plurality did not rely on that fact to distinguish *Western Nuclear*. Consequently, because it is undisputed that the sand, gravel, and rock at issue in this case "can be taken from the soil and used for commercial purposes," *Western Nuclear*, 462 U.S. at 55, we do not see any basis for distinguishing *Western Nuclear*.

Western Rock also challenges the commercial viability of sand, gravel, and rock at the time the Government made its mineral reservation. According to plaintiffs, this case should therefore be governed by *BedRoc*, not *Western Nuclear*. As plaintiffs explain in their opening brief:

> In this case, Landowners have demonstrated that gravel was not commercially viable in 1925 when the patent was issued. Because the subject property is in the same semiarid, undeveloped and sparsely populated desert area as the Nevada property at issue in *Bedroc*, the Court's conclusion that "sand and gravel were . . . commercially worthless in 1919 [to prospectors] due to Nevada's sparse population and lack of development" is facially applicable here. *Bedroc*, at 184.

Aplts' Opening Br. at 25.

The Secretary of the Interior once took a similar view: "Deposits of gravel and sand, suitable for mixing with cement for concrete construction, but having no peculiar property or characteristic giving them special value . . . , do not render the land in which they are found mineral in character within the meaning of the mining laws, or bar entry under the homestead laws, notwithstanding the land may be more valuable on account of such deposits than for agricultural purposes." *Zimmerman v. Brunson*, 39 Pub. Lands Dec. 310, 310 (1910); *see also BedRoc*, 541 U.S. at 184 n.6 ("Indeed, as petitioners aptly point out, '[e]ven the most enterprising settler could not have sold sand in the desert.'") (quoting Brief for Petitioners 6).

But, the Court in *Western Nuclear* wrestled with the identical argument, and rejected it:

> Respondent errs in relying on *Zimmerman* as evidence that Congress could not have intended the term "minerals" to encompass gravel. Although the legal understanding of a word prevailing at the time it is included in a statute is a relevant factor to consider in determining the meaning that the legislature ascribed to the word, we do not see how any inference can be drawn that the 64th Congress understood the term "minerals" to exclude gravel. It is most unlikely that many members of Congress were aware of the ruling in *Zimmerman*, which was never tested in the courts and was not mentioned in the reports or debates on the SRHA. Even if Congress had been aware of *Zimmerman*, there would be no reason to conclude that it approved of the Secretary's ruling in that case rather than this Court's opinion in [*Northern Pacific Railway Co. v. Soderberg*, 188 U.S. 526, 536 (1903)] which adopted a broad definition of the term "mineral" and quoted with approval a statement that gravel is a mineral.

462 U.S. at 45-46 (internal citations omitted); *see Soderberg*, 188 U.S. at 536 (quoting with approval a statement in an English case that "everything except the mere surface which is used for agricultural purposes; anything beyond that which is useful for any purpose whatever, whether it is gravel, marble, fire clay, or the like, comes within the word 'mineral' when there is a reservation of the mines and minerals from a grant of land." (quoting *Midland Ry. Co. v. Checkley*, (1867) L.R. 4 Eq. 19, 25 (Court of Chancery)).

We cannot agree that *BedRoc* is the applicable Supreme Court precedent. The *BedRoc* plurality looked back in time to 1919 in order to determine whether the sand and gravel at issue in that case were "valuable minerals" for purposes of the Pittman Act, which applied only to water development lands in Nevada. *See* 41 Stat. 293 (granting permit to "drill[] or otherwise explore for water beneath the surface of . . . nonmineral, nontimbered public lands . . . in the State of Nevada"); *BedRoc*, 541 U.S. at 183-84. The *BedRoc* Court refused to extend the rationale of *Western Nuclear* to the Pittman Act because the Court found that the Pittman Act's plain meaning would not support it. The Court emphasized Congress's addition of the modifier "valuable," in holding that sand and gravel were not "valuable minerals" reserved by the Pittman Act. *Id.* at 186-87.

According to the plurality, this retrospective inquiry into the question of commercial value was required by the different statutory language in the Pittman Act, *id.*, and the plurality explicitly acknowledged that such an inquiry is not

-11-

required under *Western Nuclear's* interpretation of the Stock-Raising Homestead Act, *id.* at 183 n.5 (noting that "*Western Nuclear* defined 'minerals' . . . as substances . . . that 'have separate value' from the soil," and that this definition involves only a "*minimal inquiry* into whether a substance *might at some point* have separate value from the soil and *might, in the abstract*, be susceptible of commercial use") (emphasis added). Consequently, even if the sand, gravel, and rock located on plaintiffs' property could not have been realistically used for commercial purposes in 1925, that fact is not determinative of our analysis under the Stock-Raising Homestead Act. Instead, for purposes of the Stock-Raising Homestead Act, we examine only whether the materials "might, in the abstract, be susceptible of commercial use," *id.*, and we have no difficulty answering that inquiry in the affirmative. *See New W. Materials LLC v. Interior Bd. of Land Appeals*, 398 F. Supp. 2d 438, 447 (E.D. Va. 2005) (finding that the Small Tract Act of 1938, which contains identical wording as found in the Stock-Raising Homestead Act, is governed by *Western Nuclear*, and that "mineral deposits" included sand and gravel), *aff'd*, 216 Fed. App'x 385 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 863 (2008).

Finally, Western Rock wisely does not argue that sand, gravel, and rock were intended to be included in ths surface estate. As in *Western Nuclear*,

> If we were to interpret the [Stock-Raising Homestead Act] to convey gravel deposits to the farmers and stockmen who made entries under the Act, we would in effect be saying that Congress intended to make the

-12-

exploitation of such deposits dependent solely upon the initiative of persons whose interests were known to lie elsewhere. In resolving the ambiguity in the language of the [Act], we decline to construe that language so as to produce a result at odds with the purposes underlying the statute. Instead, we interpret the language of the statute in a way that will further Congress' overriding objective of facilitating the concurrent development of surface and subsurface resources.

462 U.S. at 56. Although we expand our focus to include rock and sand here, the analysis is the same. There is no reason to suppose that rock, sand, and gravel were meant to be included in the surface estate (intended for livestock grazing), for that would hinder the concurrent development of surface and subsurface resources. *See also New W. Materials*, 398 F. Supp. 2d at 449 ("Just as Congress would not have expected the ranchers and farmers who received grants pursuant to the [Stock-Raising Homestead Act] to exploit the subsurface estate, Congress likewise could not have expected the homeowners or small business owners of five acre plots to exploit the subsurface estates sold or leased pursuant to the [Small Tract Act].").

2. Application of Supreme Court precedent

Western Rock's second argument, that the Supreme Court's reasoning in *BedRoc* applies to this case, is closely intertwined with the above analysis. As indicated, we agree with the district court that this case is controlled by *Western Nuclear*.

As the district court recognized, the *BedRoc* plurality held that *Western Nuclear*'s expansive interpretation of the United States's mineral reservation

under the Stock-Raising Homestead Act did not apply to cases arising under the Pittman Act given the materially different statutory language in the latter act. *See BedRoc*, 541 U.S. at 183-84 (stating that Congress "textually narrowed" the scope of the term "minerals" in the Pittman Act by using the modifier "valuable," and that "the term 'valuable' makes clear that Congress did not intend to include sand and gravel in the Pittman Act's mineral reservation"). As explicitly set forth in the opinions of the *BedRoc* plurality, the concurrence, and the dissent, however, every member of the Court declined to overrule *Western Nuclear*. *Id.* at 183, 189, 191-92.[1]

As a result, because this case is governed by the Stock-Raising Homestead Act, we are bound to apply the Court's decision in *Western Nuclear*, not *BedRoc*. The government's mineral reservation in this case includes sand, gravel, and rock. Moreover, while plaintiffs have made a valiant attempt to distinguish *Western*

---

[1] We acknowledge that Justice Thomas, concurring in the judgment, noted that he "believe[d] that mineral reservations pursuant to both the Pittman Act and the [Stock-Raising Homestead Act] do not include sand and gravel." 541 U.S. at 188 (Thomas, J., concurring in the judgment). However, Justice Thomas felt constrained by the doctrine of stare decisis: "Although the Court in *Western Nuclear* incorrectly applied its definition of 'minerals' to include sand and gravel, the Court is typically reluctant to overrule decisions involving statute interpretation because 'stare decisis concerns are at their acme in cases involving property and contract rights.'" *Id.* at 189 (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)).

*Nuclear*, their arguments essentially challenge the correctness of *Western*

*Nuclear*'s reasoning, and thus are better suited for a petition for certiorari.[2]

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[2] But Western Rock argues that, if we apply *BedRoc*, we need not worry about disturbing any existing contract rights, because the only interested parties here are itself and the Government. Because we hold that *Western Nuclear* applies to our analysis, we need not address this argument.