FILED
United States Court of Appeals
Tenth Circuit

May 9, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JESSICA COHON, through her
mother/next friend STEVIE BASS,

        Plaintiff - Appellant,

v.

STATE OF NEW MEXICO
DEPARTMENT OF HEALTH; NEW
MEXICO HUMAN SERVICES
DEPARTMENT; NEW MEXICO
AGING & LONG TERM SERVICES
DEPARTMENT; LOVELACE
COMMUNITY HEALTH PLAN;
CAROLYN INGRAM, Medicaid
Assistance Division Director; PAMELA
HYDE, Secretary of Human Services
Department; ALFREDO VIGIL, Secretary
of Department of Health; CINDY
PADILLA, Secretary of Aging & Long
Term Services, all in their individual
capacities,

        Defendants - Appellees.

No. 10-2002

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:08-CV-01115-LAM-RHS)**

---

Maureen A. Sanders (Duff Westbrook with her on the briefs), Sanders & Westbrook,
P.C., Albuquerque, New Mexico, for the Appellant.

Paul R. Ritzma (Mark H. Reynolds New Mexico Human Services Department, Santa Fe, New Mexico, Chris Woodward, New Mexico Department of Health, Santa Fe, New Mexico, and Ana Marie Ortiz, New Mexico Aging and Long Term Services Department, Santa Fe, New Mexico, with him on the brief), New Mexico Human Services Department, Santa Fe, New Mexico, for the Appellees.

Jennifer L. Stone and Thomas Outler, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, filed a brief for Appellee Lovelace Community Health Plan.

Before **TACHA, HOLLOWAY** and **KELLY**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiff-Appellant Jessica Cohon sought funding through New Mexico's Mi Via Waiver program,[1] a Medicaid program offered by New Mexico that offers a home and community-based alternative to institutional care for qualifying individuals. Cohon qualified for the Mi Via Waiver program and submitted budget requests which were granted in part and denied in part. She unsuccessfully filed an administrative appeal, contesting the denial of certain of her budget requests.

---

[1]    Under the Medicaid Act, once a state has entered into a partnership with the federal government to provide "medical assistance," the state is required to provide a minimum level of benefits for qualifying individuals. 42 U.S.C. § 1396a(a)(10)(A) (2006). For qualifying individuals who would otherwise require the level of care "provided in a hospital or a nursing facility or intermediate care facility for the mentally retarded," a state may alternatively provide an approved payment plan to the individual for "home and community-based services." *Id.* § 1396n(c)(1). The Mi Via Waiver program is such a program. NMAC § 8.314.6.9.

Cohon then filed suit, by and through her mother, Stevie Bass (collectively, "Cohon"), against the New Mexico Department of Health (DOH), New Mexico Human Services Department (HSD), the New Mexico Aging and Long Term Services Department (ALTSD), the three state agencies responsible for administering the Mi Via Waiver program, as well as the secretaries of the three agencies in their official capacities, and Carolyn Ingram, the Director of the Medicaid Assistance Division of HSD (collectively, "State Defendants"). Cohon also sued the Lovelace Community Health Plan ("Lovelace"), a third party assessor contracted by the three state agencies to administer budget requests for the Mi Via Waiver program.

Cohon's complaint alleged that the administration of the Mi Via Waiver program discriminated against the severely disabled, including herself. She alleged that the process by which the Mi Via program was administered violated Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (collectively, "statutory claims"), and also violated her substantive and procedural due process rights as well as the equal protection guarantees of the United States and New Mexico constitutions (collectively, "constitutional claims").

State Defendants and Lovelace moved to dismiss Cohon's complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief could be granted. Lovelace further moved to dismiss the complaint on the ground that it was not a proper party to be sued under any of Cohon's claims. The district court held that on all of

Cohon's federal claims, her complaint failed to state a claim for which relief could be granted and consequently dismissed them. The district court remanded the remaining state law claims, including Cohon's appeal of the administrative determinations, to the First Judicial District Court, County of Santa Fe, State of New Mexico for further proceedings. The district court did not reach Lovelace's additional argument that it was not a proper party to be sued. Cohon now appeals the dismissal of the federal claims in her complaint.

## I. FACTS

The Mi Via Waiver Program

The Mi Via Waiver program "provides self-directed home and community-based services to eligible [Home and Community Based Services] waiver recipients who are disabled or elderly (D&E), developmentally disabled (DD), medically fragile (MF), those diagnosed with acquired immunodeficiency syndrome (AIDS), and those diagnosed with certain brain-injuries (BI)." NMAC § 8.314.6.9 (2006). The program is designed "to provide a home and community-based alternative to institutional care that facilitates greater participant choice, direction and control over services and supports that are identified in the participant's individualized service and support plan (SSP), purchased within an agreed upon individual budgetary allotment (IBA), and delivered by service providers or vendors chosen by the participant." *Id.* For a participant with no prior waiver cost experience, his or her IBA is "calculated based on algorithms developed by

- 4 -

the state for recipients of the same waiver population . . . with similar characteristics as the [M]i [V]ia participant." NMAC § 8.314.6.17(B)(2) (2006).

The Mi Via Waiver program provides an IBA of $59,449 for developmentally disabled participants over the age of 21 who require residential support services; for those who do not require residential support services, the IBA is $34,553. A participant's budget allotment can be increased above the IBA if the participant shows that he or she has a chronic physical condition, a change in physical health status, chronic or intermittent behavioral conditions or cognitive difficulties, or a change in natural supports. R., Vol. 2 at 429-33 (Mi Via Service Standards).

Cohon's Mi Via Waiver Budget Determination

Cohon is twenty-seven years old and legally blind. She has a medical history of cerebral palsy and autism. Compl. ¶ 10. Cohon's long-term care needs were assessed at Level 1, the most severe level of need in terms of the severity of her disability and the amount of care she requires. *Id.* ¶ 19. Cohon applied for Mi Via Waiver services under New Mexico's Home and Community Based Services Waiver provisions and was determined to be medically and financially eligible. *Id.* ¶ 11.

Cohon met with Lovelace to compile a budget request. Cohon qualified for the IBA of $59,449 as a participant with no prior waiver experience who was developmentally disabled, over 21 years of age, and required residential support services. Cohon met the criteria for additional funding related to chronic or intermittent behavioral

conditions or cognitive difficulties.  *Id.* ¶¶ 20, 25.  After meeting with Lovelace, Cohon submitted a proposed request for additional funding such that her total budget request was $116,080.  *Id.* ¶ 27.  After another meeting including some state employees and Lovelace, Cohon submitted a revised budget request of $106,667.  *Id.* ¶ 28.  Lovelace determined that the revised proposed budget of $106,667 would result in savings of $13,442.50 to the state as compared with the cost of a traditional waiver program for developmentally disabled individuals.  *Id.* ¶ 29.

On March 14, 2008, Cohon's proposed budget was partially approved in the amount of $97,007.24.  *Id.* ¶ 34, 48.  Cohon's proposed budget requests had been prioritized by the State Defendant's review committee without Cohon's input.  *Id.* ¶¶ 33, 35, 37.  The $9,660.44 in funding denied included Cohon's requests for funding for the following expenses: chiropractic and orthotic services, nutritional supplements, fleet enemas, ski lessons, swim punch cards, funds to attend non-local conferences and meetings (including registration, hotel, and a per diem), four DVDs, overnight care, care buddy merit increases, driver merit increases, community job advisor raises, and money in a reserve fund.  *Id.* ¶ 36.  Of the denied expenses, all but the per diem request met the Mi Via program's standards as expenses that could be approved.  *Id.* ¶ 30.  Had the budget requests not exceeded Cohon's IBA of $59,449, they would have been approved.  *Id.* ¶ 42, 66.

Cohon requested and, on July 30, 2008, was provided with an administrative evidentiary hearing concerning the denied budget requests. The administrative law judge determined that Cohon's budget requests met the criteria for Mi Via Waiver services, that Cohon's requests for chiropractic and orthotic services, nutritional supplements, and fleet enemas should have been approved, but that the New Mexico Human Services Department had the discretion to disapprove the other services. *Id.* at 2-3. On September 30, 2008, defendant Carolyn Ingram reversed the administrative law judge's determination that any of the additional budget requests should be approved and stated that, because the additional budget requests exceeded the Mi Via budgetary allotment, they had to be necessary to "keep the participant safe" in order to be approved. *Id.* at 3.

Cohon's Complaint

Cohon's complaint asserts claims under Section 504 of the Rehabilitation Act and under Title II of the Americans with Disabilities Act (collectively, "statutory claims"). Compl. ¶¶ 99-107. Cohon alleges that the State Defendants violated Section 504 of the Rehabilitation Act "by discriminating against her in the manner used to determine the approval of budget requests within the Mi Via Waiver program." *Id.* ¶ 102. Cohon further alleges that the State Defendants violated Title II of the Americans with Disabilities Acts by "subjecting [her] to discrimination in state programs on the basis of disability." *Id.* ¶¶ 105-107. Specifically, Cohon alleges that aside from the per diem she requested, the services and budget items requested in her budget would have been

approved if her funding requests had not exceeded the $59,449 IBA set by New Mexico. *Id.* ¶¶ 30, 32, 42, 43, 44, 66.

Budget requests exceeding $59,449 were approved only if they addressed Cohon's physical safety or risks associated with behavior issues. *Id.* ¶ 41, 46. Cohon alleges that because she has a high level of need, and because the state prioritizes her budget requests, all of her requests are effectively subject to the risk/ safety limitation to which less severely disabled Mi Via participants are not subject. *Id.* ¶ 64, 65, 67, 68, 70. For example, Cohon's request for a homemaker/ companion was for $63,096. *Id.* ¶ 67. Because that line item alone exceeded her IBA of $59,449 and because the state prioritized her budget requests, all of her remaining budget requests were subject to the risk/ safety limitation. *Id.* ¶ 68. Cohon thus contends that this manner of administering the Mi Via program discriminates against her because of the severity of her disabilities. *Id.* ¶ 55.

Cohon's complaint also asserts claims under the United States and New Mexico Constitutions. *Id.* ¶¶ 92-98. Cohon alleges that her "due process rights were violated by the [State] Defendants' arbitrary and capricious manner of partially denying her budget requests." *Id.* ¶ 94. Cohon alleges that the State Defendants "fail[ed] to give her adequate notice of the reasons for the partial denial of her budget requests, [failed] to follow the Mi Via regulations and standards in partially denying her budget requests and . . . prioritiz[ed] her budget requests without input from her." *Id.* ¶ 95. Cohon alleges that

her equal protection rights were violated because she "was subjected to disparate treatment as compared to those similarly situated Mi Via participants with less severe disabilities in the criteria applied to a determination of approval/ denial of her budget requests," and that "[n]o adequate justification exists for the disparate treatment by the [State] Defendants." *Id.* ¶ 96-97.

## II.     DISCUSSION

### A.     "Final Order" Analysis

We first address whether we have a reviewable final order in this case given the parallel proceeding in state court. The district court dismissed Cohon's statutory and constitutional claims, holding that her complaint failed to state a claim for which relief could be granted as to each of those claims. The district court then declined to exercise supplemental jurisdiction over any remaining state claims and remanded adjudication of the administrative claims to the state court. R., Vol. 1 at 241-42 (citing 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid, by and through the Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")). The district court then entered final judgment.

Because the remand to the state court was discretionary under Section 1367(c), the separate state appeal pending does not deprive us of jurisdiction to hear this appeal for lack of finality. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1867 (2009)

("'[T]he [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter. Thus, the court's determination may be reviewed for abuse of discretion, but may not be raised at any time as a jurisdictional defect.'") (quoting 16 J. Moore et al., *Moore's Federal Practice* § 106.05[4], p. 106-27 (3d ed. 2009)). Thus, before the state court is Cohon's appeal of the budget requests that were denied and before us for review is the process by which the Mi Via Waiver program is administered and whether Cohon's allegations state a claim for relief under federal law.

B.          **Collateral Estoppel**

As a threshold matter, State Defendants and Lovelace argue that the district court erred in holding that Cohon was not precluded from raising her claims of discrimination. Rather, they argue that because these issues were decided in the administrative proceedings, Cohon should have been estopped from raising them before the district court. Appellee's Br. at 28-32. The Supreme Court instructs that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966)); *Brockman v. Wyo. Dept. of Fam. Servs.*, 342 F.3d 1159, 1165 (10th Cir. 2003) (applying *Elliott* to a Wyoming proceeding

- 10 -

and holding that "the hearing officer's decision is preclusive so long as the Wyoming courts themselves would give it preclusive effect.").

Under New Mexico law, the party advocating the application of collateral estoppel to an issue must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 850 P.2d 996, 1000 (N.M. 1993) (citing *Silva v. State*, 745 P.2d 380, 382-84 (1987)). Although the first prong is met because Cohon was a party to the administrative proceeding, State Defendants and Lovelace have failed to articulate any persuasive reason as to how any of the last three prongs are met, summarily stating that "it was necessary in the administrative proceedings to decide these ultimate issues," Appellee's Br. at 32, citing only Cohon's closing argument statements. *Id.* at 31 (citing R., Vol. 2 at 687 & 697).

As Cohon points out, Reply Br. at 14-15, State Defendants and Lovelace cite nothing in the administrative decision issued, and our review of the record reveals nothing, on the issue of discrimination, let alone how it was "actually litigated" or "necessarily determined" in the administrative proceedings. Rather, the September 30, 2008 decision issued by the New Mexico Human Services Department, R., Vol. 1 at 23-24, and the September 8, 2008 Findings of Fact and Conclusions recommended by the

administrative law judge, R., Vol. 1 at 25-34, reflect the adjudication only of Cohon's

budget requests.  Cohon's statutory and constitutional claims of discrimination were not

raised until she filed her complaint on October 30, 2008.  Therefore, it is unclear how any

issue of discrimination would have been actually litigated or necessarily determined in the

administrative proceeding.  Because these issues were not reached in the administrative

proceeding, there is no determination that could be given preclusive effect, whether as a

purely legal issue or otherwise.

Thus, we agree with the district court's holding that Cohon was not collaterally

estopped from raising the issues in this appeal and we need not reach the State

Defendants' and Lovelace's remaining allegations of error in the district court's decision

on this issue.  *See United States v. Lott*, 310 F.3d 1231, 1242 n.7 (10th Cir. 2002) ("We

are free to affirm a district court decision on any grounds for which there is a record

sufficient to permit conclusions of law, even grounds not relied upon by the district

court.") (citation omitted).

## C.        Statutory Claims

Cohon asserts that she has pled facts sufficient to support a claim under the ADA

and under Section 504 of the Rehabilitation Act.  Because the legal sufficiency of a

complaint is a question of law, we review de novo a district court's granting of a motion

to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Sunrise Valley, LLC v.

Kempthorne*, 528 F.3d 1251, 1254 (10th Cir. 2008).  We accept as true all well-pleaded

facts and "'construe all reasonable allegations in the light most favorable to the plaintiff.'" *Id.* (quoting *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996)). We may also consider "'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). Dismissal of a complaint is appropriate only if, accepting all facts alleged as true, Cohon has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Our function "'is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Sunrise Valley*, 528 F.3d at 1254 (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

In support of her statutory claims, Cohon alleges that the following procedural components of the Mi Via Waiver program administration discriminated against her on the basis of the severity of her disability: (i) the $59,449 IBA applied to Cohon was calculated using all individuals with a developmental disability rather than those with "similar characteristics"; (ii) the requirement that budget requests over $59,449 were

approved only if they addressed her physical safety because her requests would have otherwise been approved if they did not exceed $59,449; and (iii) the $59,449 budget allotment effectively precluded Mi Via Waiver participants with severe disabilities from accessing Mi Via services which address the Mi Via goals of self-direction and self-determination. Aplt's Br. at 14. We address each of these arguments in turn.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2006). To state a claim under Section 504, "a plaintiff must prove (1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992) (citations omitted). The parties do not contest that Cohon has met prongs (1), (2), and (4). Appellee's Br. at 10; R., Vol. 1 at 231. The only issue is whether she has stated a prima facie case that the Mi Via Waiver program discriminated against her on the basis of the severity of her disability.

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132 (2006). To state a claim under Title II, the plaintiff must allege that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). The parties do not dispute that Cohon has met the first prong under Title II of the ADA, and thus the question is whether she was denied benefits of the Mi Via Waiver program by reason of her disability. Appellee's Br. at 10; R., Vol. 1 at 230-231.

"To the extent feasible, we look to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA." *Patton v. TIC United Corp.*, 77 F.3d 1235, 1245 (10th Cir. 1996) (citing *Helen L. v. DiDario*, 46 F.3d 325, 330 n.7 (3d Cir. 1995)); *see also Rogers v. Dep't of Health and Envtl. Control*, 174 F.3d 431, 434 (4th Cir. 1999) ("We may presume that Congress was aware of the Supreme Court's interpretation of § 504 of the Rehabilitation Act when it (Congress) passed the ADA in 1990 and included antidiscrimination language in § 12132 that parallels § 504 of the Rehabilitation Act.") (citing *Cannon v. Univ. of Chicago,* 441 U.S. 677, 696-97 (1979)); *Doe v. Univ. of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264 n. 9 (4th Cir.1995) ("Because the language of [Title II of the ADA and the Rehabilitation Act] is substantially the same, we apply the same analysis to both"); *DiDario*, 46 F.3d at 331 (explaining that Title II of

the ADA, 42 U.S.C. §§ 12131-12134, incorporates the "non-discrimination principles" of section 504 of the Rehabilitation Act) (citation omitted).  Because neither party argues that the non-discrimination principles of the ADA and of the Rehabilitation Act require distinct analysis in this case, we will address them together.

As to Cohon's first claim that the $59,449 IBA is discriminatory, we must determine whether Cohon's well-pled allegations state a claim for which relief may be given.  In *Alexander v. Choate*, the Supreme Court held that Section 504 "requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers."  469 U.S. 287, 301 (1985) (analyzing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397 (1979)); *Patton*, 77 F.3d at 1246 ("A facially neutral governmental restriction does not deny 'meaningful access' to the disabled simply because disabled persons are more likely to be affected by it.") (quoting *Choate*, 469 U.S. at 303-04).  The Supreme Court reasoned that this "struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs."  *Choate*, 469 U.S. at 300.  Thus, to state a Section 504 claim, Cohon must allege facts demonstrating that she has been denied meaningful access to the $59,449 individual budget allotment provided by the Mi Via Waiver Program.

Under this lens, Cohon does not allege that she was denied meaningful access to the $59,449 budget allotment.  Indeed, she was granted that amount in full.  Under

*Patton*, this does not amount to a denial of meaningful access under the ADA solely because it is insufficient to meet her needs. Rather, Cohon alleges that the $59,449 individual budget allotment is discriminatory because the amount was "arbitrarily" determined "using an undisclosed algorithm with weighted averages for all adults with developmental disabilities rather than using all adults with similar characteristics as Jessica Cohon." *Id.* ¶¶ 17, 18, 51. Essentially, Cohon's allegation is that the category of "all developmentally disabled individuals over the age of 21 who require residential support" is insufficiently similar to her because it is not determined using only those individuals who require a Level 1 level of long term care. Yet, it is unclear how this is discriminatory.

As the Supreme Court in *Choate* explained, states have the discretion to determine the mix of programs and services that Medicaid beneficiaries will be afforded so long as they serve the interests of the Medicaid population. 469 U.S. at 303 ("[T]he [federal Medicaid] Act gives States substantial discretion to choose the proper mix of amount, scope, and durational limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'"). Although Cohon argues that the $59,449 IBA is insufficient to meet her needs, she does not allege that it is insufficient to serve the interests of the Medicaid population as a whole. That she requires more money than the average developmentally disabled Mi Via Waiver participant is a matter of mathematical truth: for any average, some individuals will require more money than the average and

- 17 -

some will require less. That does not mean the average is discriminatory, particularly because the $59,449 budget allotment is a starting point, adjusted further based on her needs.

As the D.C. Circuit reasoned in *Modderno v. King*, "[i]f § 504 permits across-the-board limits on coverage, as [*Choate*] holds, then it cannot forbid partial limits that leave some disabled individuals better off and the remainder no worse off." 82 F.3d 1059, 1062 (D.C. Cir. 1996) (citing *Traynor v. Turnage,* 485 U.S. 535, 549 (1988)). Moreover, as the State Defendants and Lovelace point out, "[t]he problem with [Cohon]'s theory is that the State must establish a way to provide a budget allotment for a new participant in the program with no prior cost history." Appellee's Br. at 17.

Although Cohon further conclusorily alleges that the $59,449 individual budget allotment was money-based rather than needs-based, she does not plead facts supporting this allegation. Cohon does allege that her revised proposed budget of $106,667 would result in a $13,442.50 savings to the state of New Mexico as compared with the traditional developmentally disabled waiver program, Compl. ¶ 29, but she cites no case suggesting that her monetary entitlements under a separate program bear on whether the administration of the Mi Via program is discriminatory.

To the extent Cohon attempts to redefine "benefit" as synonymous with the Mi Via waiver programs' "goals" of self-direction and self-sufficiency, we are unconvinced that this is what the ADA and Section 504 require. The state cannot provide "self-direction";

it can only provide an allocation or package of services or compensation in the hope that participants can achieve those goals using the program's provided "benefits." As the Supreme Court explained in *Choate*, "[a]ny interpretation of § 504 must . . . be responsive to two powerful but countervailing considerations – the need to give effect to statutory objectives and the desire to keep § 504 within manageable bounds." 469 U.S. at 299. Cohon's position would render the Mi Via program administratively unworkable and would supply a cause of action to any individual claiming to require further services in order to achieve the program's goals. Thus, Cohon's allegations that the Mi Via program's method of establishing and administering the $59,449 IBA was discriminatory do not state a claim for relief under either the ADA or the Rehabilitation Act.

We next turn to Cohon's argument that the safety requirement imposed on her budget requests exceeding $59,449 is discriminatory because it is not also imposed on those less severely disabled whose budget requests do not exceed $59,449. Cohon alleges that her budget requests would have been approved had they not exceeded $59,449. Yet, Cohon qualifies for a budget allotment in excess of $59,449 precisely because of the severity of her disabilities. She qualified for an approved budget of $97,007.24 to pay for her care buddies, a job coach, a life skills coach, a driver, and a budget to pay for mileage to and from her community activities. That additional funding is available to her that is not also available to less severely disabled individuals is not discriminatory. *See also Ackley v. Corp. of State of Ariz.*, 98 F.3d 461, 462 (9th Cir. 1996) ("The class plaintiffs do

not argue that Arizona has excluded severely disabled persons from state services, programs or activities by reason of their disability.  Indeed, it [sic] could not seriously make such an argument because Arizona has provided disability benefits to severely disabled persons precisely because of their disability.").  Moreover, the Supreme Court has explained that "[i]t is not required that any benefit extended to one category of individual with a disability also be extended to all other categories of individual with a disability.  Thus, any class so excluded is not denied benefits solely on the basis of disability within the meaning of Section 504."  *Traynor*, 485 U.S. at 549.[2]

Cohon next argues that New Mexico's program is facially discriminatory because "[t]he State Defendants [sic] use of the safety/ risk limitations do [sic] not apply to all Mi Via participant budget requests.  Rather they are only imposed upon budget requests above the individual budgetary allotment."  Aplt's Br. at 18.  However, Cohon's argument misunderstands the nature of a facially discriminatory regulation.  The risk/

---

[2]        Cohon argues that the District of New Mexico has held that the "*Traynor* reasoning 'does not encompass the severely handicapped plaintiffs who cannot be faulted for the occurrence of their condition.'"  Aplt.'s Br. at 20 (citing *Jackson v. Ft. Stanton Hosp. & Training School*, 757 F. Supp. 1243, 1299 n.36 (D.N.M. 1990), *rev'd on other grounds in Jackson v. Fort Stanton Hosp. and Training School*, 964 F.2d 980 (10th Cir. 1992)).  This distinction is questionable as circuit courts have cited *Traynor* in contexts suggesting it is not limited to instances in which the plaintiff "cannot be faulted" for their condition.  *See Rogers v. Dep't of Health and Envtl. Control*, 174 F.3d 431, 434-36 (4th Cir. 1999) (applying *Traynor's* reasoning and holding that Title II of the ADA did not require a state to provide to mentally disabled equal long term disability for those physically disabled); *Vaughn v. Sullivan*, 83 F.3d 907, 909-910, 913 (7th Cir. 1996) (holding that Indiana's preferential treatment of the blind over all other disabilities, including the two representative plaintiff's severe disabilities of multiple sclerosis and being a quadriplegic as a result of a shooting accident, was not forbidden by the ADA and the Rehabilitation Act, citing *Traynor*).

safety limitation imposed does not facially discriminate against the severely disabled even if it may affect the severely disabled with higher frequency because of the costs needed to address their needs. *Compare* Cohon's circumstances *with Lovell v. Chandler*, 303 F.3d 1039, 1045 (9th Cir. 2002) (where the aged, blind, and disabled were *categorically excluded* from Hawaii's QUEST pilot program, resulting in the Ninth Circuit's holding that the QUEST pilot program violated the ADA and Rehabilitation Act).

Cohon's argument is also self-defeating to the extent she alleges that the risk/ safety limitation is discriminatory because it "preclude[s] [her] from having any budget requests not related to safety concerns approved by the Defendants." Aplt's Br. at 25-26 (citing NMAC § 8.314.6.9). The relevant portion of the governing Mi Via Waiver program regulation makes clear that Cohon's budget requests are at all times subject to the "agreed upon individual budgetary allotment (IBA)." NMAC § 8.314.6.9. Moreover, to the extent Cohon argues that the state's process is discriminatory because it prioritizes her budget requests, it is unclear how this is discriminatory, or how the program would be administrable if the state could not prioritize the budget requests.

Insofar as Cohon argues that the remaining budget items were denied despite satisfying the risk/ safety limitation, or were necessary for her to attain the program's goal of self-direction, those questions are properly before the state court and not before us. Thus Cohon's allegations that the risk/ safety limitation for requests exceeding $59,449 are discriminatory do not state a claim for which we may grant relief.

Finally, we turn to Cohon's argument that the Mi Via program is discriminatory against those with severe disabilities because they are precluded from accessing Mi Via services which address the Mi Via goals of self-direction and self-determination. As discussed above, Cohon does not have a legal entitlement to the services she requests; her budget requests are eligible for approval but they are also subject to the IBA limitation. This does not amount to discrimination. *C.f. Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) ("[T]here is no discrimination under the [ADA] where disabled individuals are given the same opportunity as everyone else."); *McKelvey v. Turnage*, 792 F.2d 194, 202-203, 253 (D.C. Cir. 1986) (per curiam) (holding that the Veteran Administration's irrebuttable presumption that all veterans suffering from alcoholism did so as a result of their own misconduct was not discriminatory even though it resulted in veterans suffering from alcoholism being unable to obtain extensions of educational benefit cutoffs). Insofar as Cohon seeks to achieve the goals of self-direction and the approval of budget requests sufficient to meet that end, the Medicaid program cannot guarantee "equal results," despite Cohon's arguments that she does not seek equal results. *See Cercpac v. Health and Hosp. Corp.,* 147 F.3d 165, 168 (2d Cir. 1998) ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided.").

Cohon next argues that she states a claim of discrimination on the basis of unjustified isolation under *Olmstead v. Zimring*. Aplt's Br. at 21 (citing 527 U.S. 581

- 22 -

(1999)).  In *Olmstead*, the Supreme Court recognized that individuals with mental disabilities in institutions are subject to unjustified isolation and that unnecessary isolation in this context could be seen as discrimination based on disability.  527 U.S. at 597-601.  In *Fisher v. Oklahoma Health Care Authority*, our court held that an individual did not need to be institutionalized in order to assert an *Olmstead* claim.  335 F.3d 1175, 1181-82 (10th Cir. 2003).  There, individuals brought an action seeking declaratory and injunctive relief, arguing that a prescription drug cap violated the ADA because it would force the plaintiffs to enter nursing facilities prematurely in order to obtain necessary prescriptions.  *Id.* at 1181.  Recognizing that the plaintiffs were not yet institutionalized, our court reasoned that "nothing in the *Olmstead* decision support[ed] a conclusion that institutionalization is a prerequisite to enforcement of the ADA's integration requirements."  *Id.*

Cohon urges us to read *Fisher* as expanding *Olmstead's* "unjustified isolation" claims beyond the context of institutionalization without citing support for such a broad reading and we are unpersuaded that either decision should be read so broadly.  As the Ninth Circuit has explained, "where the issue is the location of services, not whether services will be provided, *Olmstead* controls."  *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003) (citing *Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999)).  Thus, to state a claim under *Olmstead*, Cohon had to allege facts supporting a claim that the process by which the Mi Via program was administered would result in her

unjustified isolation or premature institutionalization, and she has not. Although Cohon urges repeatedly that the denial of her budget requests results in her falling short of being able to meet her goals of self-direction, these allegations do not amount to an *Olmstead* claim. To the extent that Cohon argues that the denial of her requested services would result in an *Olmstead* claim, her denied budget requests are not before us; they are before the state court. As to the "process" of administering the Mi Via program, the facts alleged by Cohon do not state an *Olmstead* claim.

To save her argument, Cohon next argues in her briefing, but not in her complaint, that persons similar to her are already institutionalized in nursing homes. Aplt's Br. at 22-23; 26-27. We are, however, not obliged to consider allegations that are newly made on appeal, since we are reviewing the sufficiency of the complaint. *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993). Thus, we agree with the district court's conclusion that *Olmstead* does not support Cohon's claims.

### D.       Constitutional Claims

We now turn to Cohon's constitutional claims.

*Equal Protection*

Because Cohon is not a member of a suspect class and she does not contend that she was denied a fundamental right, the Mi Via program administration must only satisfy rational basis review. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1233-34 (10th Cir. 2009) (citing *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1213 (10th

Cir. 2002)); *see S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008) ("Disabled persons are not a suspect class for purposes of an equal protection challenge.") (citing *Tennessee v. Lane,* 541 U.S. 509, 522 (2004)).  Under rational basis review, a challenged state action survives if it rationally furthers a legitimate state interest.  *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).  "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification."  *Id.* (citing *United States v. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 174, 179 (1980)).  The burden is on the challenging party "to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 367 (2001) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Cohon argues that she is disparately treated as compared with the less severely disabled because they are allowed to obtain services that address their health, safety, and community integration needs, whereas her requests are approved only if they relate to her safety needs.  Aplt's Br. at 31-32.  The district court disagreed and held that Cohon failed to state an equal protection claim under the Fourteenth Amendment of the United States Constitution because the State Defendants' safety and risk limitation satisfied rational basis review.  The district court reasoned that Cohon was eligible for an increased budget over $59,449 because she qualified under the "Chronic or Intermittent Behavioral Conditions or Cognitive Difficulties" category, "which requires a showing that she needs additional services 'in order to keep [her] safe.'"  R., Vol. 1 at 241 (record citation

omitted). Thus, "it is rational for State Defendants to require participants who qualify for an increased budget allotment based on those participants' safety needs to be required to show that those additional services be related to the participants' safety." *Id.*

Cohon's only response to the district court's reasoning is to argue that the Mi Via program's safety and risk requirement fails rational basis review because it "is not appropriate for the Defendants to limit the approval of budget requests to those instances where the requested services address safety issues," given that her behavioral and cognitive issues are not limited to safety issues. Aplt's Br. at 32. However, Cohon's characterizing the program administration scheme as "not appropriate" does not demonstrate how it fails rational basis review. Moreover, we are not the appropriate tribunal to address the "appropriateness" of Cohon's denied budget requests as those are on appeal before the state court and not before us now.

The district court did not separately or specifically address Cohon's equal protection claim under the New Mexico Constitution, nor does Cohon assert that the analysis would be different from that under the Equal Protection Clause of the Fourteenth Amendment. We therefore do not undertake that analysis.

*Due Process*

Cohon next argues that she has stated a claim that the State Defendants and Lovelace violated her due process rights in violation of the United States and New Mexico Constitutions because their actions were arbitrary and capricious. Aplt's Br. at

- 26 -

30. Specifically, Cohon contends that the State Defendants gave insufficient notice of the reasons for her budget denials, and that the State Defendants failed to follow the Mi Via regulations and standards. Moreover, the State Defendants' reprioritizing her budget requests without her participation violated her due process guarantees. Because these failures deprived Cohon "of the essential nature of the Mi Via program—self-direction, self-determination, and choice," Cohon argues that "they violated [Cohon]'s procedural and substantive due process rights." *Id.* at 31

The district court held that Cohon's allegations failed to state either a substantive or procedural due process claim. To state a claim for relief for a violation of substantive due process, Cohon must demonstrate that the State Defendants' conduct is "arbitrary, lacking a rational basis, or shocking to the conscience of the Court." *Butler v. Rio Rancho Public Sch. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir. 2003). As to Cohon's claim that she was given insufficient notice for the reasons of her budget denials, the district court pointed out that the NMAC § 8.314.6.17(C) was cited as the basis for the denial. Cohon argues that § 8.314.6.17(C) supports the granting of her budget requests rather than its denial. We are unpersuaded and do not find Cohon's allegations sufficient to state a substantive due process claim.

The documents attached to Cohon's complaint reflect notice that the following occurred: the administrative law judge found that Cohon's budget requests "did meet the criteria as outlined in 8.314.6.17, but that per the same regulation, the Department has the

discretion to approve or disapprove services, supports or goods as it deems," R., Vol. 2 at 261, and the Hearing Decision explained that Cohon's "Increased Budgetary Allotment request was properly granted under the Chronic or Intermittent Behavioral Conditions or Cognitive Difficulties category," and that under that category, "requested budget items must be necessary to 'keep the participant safe.'" *Id.* at 251. We agree with the district court, R., Vol. 1 at 237 (record citation omitted), that Cohon's allegation that she received "inadequate notice" is conclusory and is not supported by well-pled facts in her complaint. Moreover, the allegations do not state a substantive due process claim because they do not show actions that are arbitrary, lacking in a rational basis, or shocking to the conscience of the court.

Similarly Cohon's allegation that the Mi Via program failed to follow its own regulations and standards does not amount to a substantive due process violation. As the district court explained, and as Cohon does not contest on appeal, the "State Defendants' requirement that [Cohon]'s benefits over the initial budget allotment amount must be linked to her safety is consistent with their regulations and standards because the category under which [Cohon] is eligible for increased benefits explicitly states that those additional needs must be related to safety." *Id.* at 239; *see* R., Vol. 2 at 431-33 (Mi Via Service Standards for increased funding for chronic or intermittent behavioral conditions or cognitive difficulties). Moreover, we agree with the district court's characterization of

Cohon's allegation that the State Defendants failed to follow their own regulations as conclusory. R., Vol. 1 at 239.

Next, Cohon's allegation that the State Defendants' failure to allow her to prioritize her budget requests similarly does not state a substantive due process claim. There is nothing in the Mi Via program rules or standards "that give [sic] complete discretion to the participants in the prioritization of their budget requests." *Id.* (citing NMAC § 8.314.6.17(E) (2006) (the Mi Via budget is submitted to the State's utilization review contractor for final approval)). We again agree with the district court's holding that it was "not arbitrary, nor without a rational basis, nor shocking to the conscience for State Defendants to conduct the final prioritization of [Cohon's] (or any participant's) budget requests." *Id.* at 239-40.

Lastly, the district court found that Cohon's complaint failed to state a claim for any violation of her procedural due process rights. The district court explained that "[p]rocedural due process is a guarantee that the state will not deprive individuals of a protected liberty or property interest without the benefit of procedures such as notice and an opportunity to be heard." *Id.* at 240 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Because Cohon was "given notice that she could request a re-review or reconsideration or appeal the denial of her budget request by requesting a fair hearing," and because she "did request and was given a full hearing where she was represented by counsel and was permitted to present witnesses and submit evidence," the district court

held that she has failed to state a claim that she was denied her procedural due process rights. *Id.* We agree.

**E.**         **Lovelace**

Because we affirm the district court's dismissal of Cohon's federal claims as insufficient in substance, we do not reach Lovelace's arguments as to whether it is a proper party to be sued under the ADA or under the Rehabilitation Act.

## **CONCLUSION**

Accordingly, the judgment of the district court is AFFIRMED.